Loy L. Stone v. Commissioner.
Stone v. Commissioner
Docket No. 4227-71.
United States Tax Court
T.C. Memo 1972-211; 1972 Tax Ct. Memo LEXIS 46; 31 T.C.M. (CCH) 1042; T.C.M. (RIA) 72211; October 2, 1972. Filed Tried in Portland, Oregon. Oregon. Warde H. Erwin, 3323 S. W. Harbor Drive, Portland, Ore., and Dennis V. Gilbert, for the petitioner. Robert J. Chicoine, for the respondent. QUEALY
Memorandum Findings of Fact and Opinion QUEALY, Judge: In this proceeding, respondent determined that there were deficiencies in income taxes due from the petitioner for the years 1964, 1965, and 1967 in the amounts of $574.56, $1,104.21, and $58.38, respectively. The sole question presented is whether the petitioner sustained a deductible casualty loss under section 165 [1] in 1967. 1043 The petitioner (hereinafter sometimes referred to as "Mrs. Stone") is an individual whose legal residence at the time the petition herein was filed was in Portland, Oregon. She filed her individual U.S. income tax returns for the years 1964, 1965, and 1967, with the district director of internal revenue, Portland, Oregon. *48 On September 27, 1967, the petitioner's home and its contents were accidentally destroyed by fire. At the time of the loss, the home was covered by insurance for $13,000 and its contents for $8,000. Shortly after the fire, the petitioner, with the assistance of an adjuster from her insurer, prepared a list of the contents and arrived at an estimated value therefor of $19,978.95 at the time of the loss. Mrs. Stone filed a claim for the contents with the insurance company for $8,000 and received payment in that amount. On her return for 1967, she claimed a fire loss in the amount of $11,878.95, representing the amount of her loss less the reimbursement received and the statutory exclusion required by section 165. [2]
*49 On September 18, 1968, Mrs. Stone filed Form 1045, "Application for Tentative Carryback Adjustment," claiming a net operating loss carryback of $10,066.45 computed as follows: Casualty loss on personal property
$19,978.95
Less: Insurance proceeds $8,000.00
$100 limitation100.00
1967 salary income 1,812.50 9,912.50
Net loss $10,066.45 On November 15, 1968, petitioner's applicat2on for a tentative carryback adjustment was allowed pursuant to section 6411, [3] resulting in decreased liability for the years as follows: Decrease
Year
in Tax
1964
$ 574.76
1965 1,104.21
Total $1,678.97
*50 By statutory notice dated March 26, 1971, the respondent determined that the net operating loss deductions for the years 1964 and 1965 were not allowable because the petitioner had not sustained a deductible casualty loss in 1967. The sole determination which need here be made is the fair market value of the contents of petitioner's home immediately before the fire. The respondent contends that the contents were worth no more than $8,000, the amount of insurance received by the petitioner, whose position is that the value of her household belongings was $19,978.95. Their true worth, no doubt, lies somewhere in between. The parties are both in agreement that the fair market value of the contents following the fire was zero. Respondent cites sections 1.165-7(a)(2) and 1.165-7(b) of the Regulations in support of his position. Section 1.165-7(a)(2) provides in part: (2) Method of valuation. (i) In determining the amount of loss deductible under this section, the fair market value 1044 of the property immediately before and immediately after the casualty shall generally be ascertained by competent appraisal. * * * Sec. 1.165-7(b) provides in part: (b) Amount deductible - *51 (1) General rule. In the case of any casualty loss * * *, the amount of loss to be taken into account for purposes of section 165(a) shall be the lesser of either - (i) The amount which is equal to the fair market value of the property immediately before the casualty reduced by the fair market value of the property immediately after the casualty; or (ii) The amount of the adjusted basis prescribed in section 1.1011-1 for determining the loss from the sale or other disposition of the property involved. From those regulations, the respondent argues that the petitioner must establish the adjusted basis of the property and its fair market value immediately before the fire to show the lesser of those amounts, citing . We hold that to the extent Mrs. Stone has established the cost of her personal household items she has established her basis for purposes of the casualty loss deduction. An examination of the returns before us, which cover the years in which the bulk of the items are claimed by the petitioner to have been acquired, discloses none of the adjustments to basis required by the statute, [4] nor is there any other evidence *52 upon which an inference could be based that such adjustments were made. It may, therefore, be reasonably inferred that the amount we here allow does not exceed the basis of the contents of petitioner's home. Petitioner attempted to establish the fair market value of the items destroyed through her own testimony and two inventory lists; one prepared shortly after the fire with the assistance of an adjuster from her insurance company, the other prepared shortly before trial. We are constrained to attach more weight to the first list than to the second or to petitioner's testimony, which took little, if any, notice of the "willing buyer - willing seller" concept of arriving at fair market value. Notwithstanding that the evidence may not strictly comply with respondent's regulations, we think that the petitioner has met her burden to the extent of a portion of the loss. Having lost the entire contents of her home, she cannot be expected to produce any documentary evidence of the cost of such personal items. An appraisal following the fire would be of little assistance. She presented her case as well as can be expected under the circumstances, and her *53 reliance upon her memory to establish cost and value, even if inflated, is not fatal to her claim. See, e. g., . The petitioner cites , in support of her proposition that fair market value may be found by depreciating her cost for the items at a rate of 20 to 25 percent. While we do not dispute the use of such a formula under certain circumstances, in this case the original cost figures lack the reliability necessary to such a method of determining fair market value. From the inventories prepared by the petitioner, supported by her testimony, we have considered each of the items lost, their source and approximate age where indicated, and determined their value. We find that the fair market value of petitioner's household goods immediately before the fire was $13,650, which amount did not exceed petitioner's cost in those items. Our finding is buttressed by the fact that the insurer paid the full amount of the policy without questioning petitioner's valuation. From this, it must be inferred that the loss exceeded the face amount of the policy. Accordingly, after subtracting the *54 $100 limitation of section 165(c)(3) and the $8,000 insurance recovery, petitioner incurred a deductible casualty loss in 1967 of $5,550. Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. SEC. 165. LOSSES. (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * * (c) Limitation on Losses of Individuals. -in the case of an individual, the deduction under subsection (a) shall be limited to - * * * (3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. A loss described in this paragraph shall be allowed only to the extent that the amount of loss to such individual arising from each casualty, or from each theft, exceeds $100. * * *↩
3. SEC. 6411. TENTATIVE CARRYBACK ADJUSTMENTS. (a) Application for Adjustment. - A taxpayer may file an application for a tentative carryback adjustment of the tax for the prior taxable year affected by a net operating loss carryback provided in section 172(b), * * * from any taxable year. * * * An application under this subsection shall not constitute a claim for credit or refund. (b) Allowance of Adjustments. - Within a period of 90 days from the date on which an application for a tentative carryback adjustment is filed under subsection (a), or from the last day of the month in which falls the last date prescribed by law (including any extension of time granted the taxpayer) for filing the return for the taxable year of the net operating loss * * * from which such carryback results, whichever is the later, the Secretary or his delegate shall make, to the extent he deems practicable in such period, a limited examination of the application, to discover omissions and errors of computation therein, and shall determine the amount of the decrease in the tax attributable to such carryback upon the basis of the application and the examination * * *. Such decrease shall be applied against any unpaid amount of the tax decreased * * * and any remainder shall be credited against any unsatisfied amount of any tax for the taxable year immediately preceding the taxable year of the net operating loss * * *. Any remainder shall, within such 90-day period, be either credited against any tax or installment thereof then due from the taxpayer, or refunded to the taxpayer.↩
4. See sec. 1011, et seq.↩